UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BENSON,

        Plaintiff,                CIVIL ACTION NO. 12-10400

vs.

                                    DISTRICT JUDGE THOMAS L. LUDINGTON

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 12) be denied, Defendant's motion for summary judgment (docket no. 18) be granted, and Plaintiff's complaint be dismissed.

**II.    PROCEDURAL HISTORY:**

Plaintiff was born in 1991 and was found disabled and eligible for supplemental security income childhood disability benefits as of July 1, 1992 due to sickle cell anemia that met the childhood sickle cell anemia listing 107.05D. (TR 100). At his age eighteen redetermination, Plaintiff claimed that his disability continues based on a history of stroke that caused left-sided weakness, seizures, a learning disability, sickle cell anemia, loss of vision in his left eye, short term memory loss, and headaches. (TR 100, 156). The Social Security Administration reviewed Plaintiff's case and found that as of November 1, 2009 Plaintiff no longer qualifies for supplemental security income because the severity of his impairments do not meet or equal the adult Social Security rules. (TR 64-72). The Agency's decision was upheld on reconsideration after a disability

hearing by the State Disability Hearing Officer. (TR 97-108). On March 24, 2011 Plaintiff appeared with counsel in Detroit, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) John Rabaut. (TR 34-60). Vocational Expert (VE) Jennifer Trekie also appeared and testified at the hearing. In a May 17, 2011 decision the ALJ found that Plaintiff was not entitled to continuing disability benefits because his disability ended on November 1, 2009 and he had not become disabled again since that date. (TR 20-28). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross-motions for summary judgment which are currently before the Court.

### III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was nineteen years old at the time of the administrative hearing. (TR 38). He attended special education classes during his school years due to a learning disability and he earned a high school diploma. He lives in a single-story home with his mother and brother, and except for a short stint as a playground monitor for a summer camp, he has never held a job. (TR 39, 156).

Plaintiff testified that he had three seizures in one day in the month preceding the hearing. (TR 40). He claims he averages two to three seizures each month and he seeks emergency medical treatment from the hospital each time a seizure occurs. (TR 40-41). He testified that he has difficulty using his left arm and leg. (TR 42-43). Plaintiff stated that he had a bone marrow transplant to treat his sickle cell anemia and he suffered a stroke that weakened the left side of his body. He reported that he has difficultly concentrating, but states that he spends time each day watching movies, sports, and cooking shows on television. (TR 45-46). He also reported that he plays X-Box 360 video games with his friends and he enjoys talking on the telephone and using

Facebook. (TR 47, 50). Plaintiff testified that he can walk ten minutes at a time before needing to rest and he may walk up to four blocks on a typical day for exercise. (TR 47, 50). He testified that he takes Lamictal and Phenobarbital. (TR 48).

Plaintiff testified that he is able to use a microwave to cook simple meals, he can make his bed and fix himself a bowl of cereal for breakfast, he can shop at the store, and he attends to his own hygiene needs without difficulty. (TR 44-45, 49, 52). He also reported that he is able to read simple words and perform basic addition and subtraction. (TR 51).

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below. On February 15, 2007 a school psychologist with Detroit Public Schools performed a special education evaluation review for Plaintiff when he was just shy of sixteen years old. (TR 236-43). WISC-III tests dated April 1999 reveal that Plaintiff had a full scale IQ of 73, a verbal IQ of 90, and a performance IQ of 60. (TR 239). Plaintiff scored a kindergarten level in reading and spelling and a first grade level in reading comprehension and arithmetic. (TR 239-40).

John Jeter, MA, LLP, LMSW and Hugh Bray, Ph.D., LP performed psychological testing and a mental status examination on September 26, 2009 for the State Disability Determination Service. (TR 274-78). The practitioners documented that Plaintiff responded well to instructions, needed no special assistance to complete the examination, and worked diligently. Plaintiff could recite four numbers forward and three backward, and recall three of three objects with a three minute delay. He could subtract threes from one hundred to the number seventy-six, and he could spell the word "world" backward. His scores on the WRAT-3 were consistent with a fourth grade reading

level and sixth grade math level. Plaintiff had a verbal IQ of 74, a performance IQ of 75, and a full scale IQ of 72, placing him in the borderline range of cognitive functioning. The practitioners opined that Plaintiff is able to understand, retain and follow simple instructions, and his mental status restricted him to performing simple, routine, repetitive, concrete and tangible tasks.

On November 16, 2009 Dr. Zahra Khademian completed a Psychiatric Review Technique on behalf of the State Disability Determination Service. (TR 288-301). Dr. Khademian evaluated Plaintiff under listing 12.02, Organic Mental Disorders, based on his learning disability and borderline IQ ability. The doctor found that Plaintiff did not meet the "B" criteria for the listing as he had only moderate restrictions in his activities of daily living and ability to maintain concentration, persistence, or pace, mild restrictions in maintaining social functioning, and no episodes of decompensation. The doctor also found that Plaintiff did not meet the "C" criteria. A Psychiatric Review Technique performed by Constance Fullilove, Ph.D. in December 2009 confirmed Dr. Khademian's findings, except that Constance Fullilove found that Plaintiff had mild and not moderate restrictions in his ability to maintain concentration, persistence or pace. (TR 310-23).

Mental RFC's completed by Dr. Zahra Khademian and Constance Fullilove, Ph.D. in November and December 2009 revealed identical findings, with the exception that Dr. Khademian was more restrictive than was Constance Fullilove in finding that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods and set realistic goals or make plans independently of others. (TR 302-08). In other respects the practitioners independently agreed that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, but that he was otherwise not significantly limited. Both practitioners

4

concluded that Plaintiff retained the mental capacity to perform simple routine tasks on a sustained basis.  (TR 302-08, 324-25).

Plaintiff reported for emergency treatment for seizures at Sinai-Grace Hospital on May 21, 2009, where he reportedly had three seizures during the course of the day.  (TR 247-67).  According to the emergency department report, Plaintiff's mother expressed concern over his possible drug use but stated that he was compliant with his medication.  A blood laboratory test shows Plaintiff's Phenobarbital at therapeutic levels.  An EEG dated May 22, 2009 was within normal limits.  (TR 254).  The record shows that Plaintiff had another seizure episode in July 2009.  (TR 272).

Plaintiff presented for evaluation to the Children's Hospital neurology department on December 9, 2009 at the age of seventeen years and eight months.  (TR 244-45).  Plaintiff reported having seizures twice per month, mostly at night.  His mother reported that he had no seizures for over ten years while taking Phenobarbital, and he had no side effects to medication.  The evaluator noted that Plaintiff was alert, oriented, and very pleasant.  The report states that Plaintiff had decreased tone and range of motion of the left upper extremity and a left hemiparetic gait.  Plaintiff was restarted on Phenobarbital and reevaluated in August 2009.  (TR 272-73).

A physical RFC completed by Dr. Muhammad Ahmed in October 2009 states that Plaintiff could occasionally lift and carry twenty pounds and frequently ten pounds, stand/walk/sit approximately six hours in an eight hour day, with limited ability to push or pull with the upper extremities.  (TR 280-87).  Dr. Ahmed opined that Plaintiff could never climb ladders/ropes/scaffolds, occasionally crawl or climb ramps and stairs, and frequently balance, stoop, kneel, crouch, and crawl.  He found that Plaintiff was occasionally limited in his ability to perform handling tasks with his left upper extremity, but was otherwise unlimited in his ability to finger, feel,

and reach in all directions including overhead. He found that Plaintiff should avoid all exposure to environmental hazards and concentrated exposure to humidity.

In December 2009 Dr. James Greco completed a case analysis concerning Plaintiff's physical ailments and a review of the physical RFC. (TR 326-28). Dr. Greco concluded that Plaintiff's physical impairments were severe but not so severe as to meet or equal the criteria for an adult listing. (TR 326). He also concluded that due to fatigue associated with leg weakness, Plaintiff should be restricted to two hours of standing or walking in an eight hour day rather than six hours. (TR 327). In addition, the doctor clarified that Plaintiff should not work at unprotected heights or around dangerous open or moving machinery.

Treatment records from the Michigan Neurology Associates, P.C. dated November 17, 2010 through February 8, 2011 reveal that Plaintiff reported seizure activity in November and December 2010. (TR 334-41). The December seizure was described as a complex partial seizure of unknown duration which included a lapse of consciousness on a level one out of five severity, but which did not include tonic features or tongue biting. (TR 335). During the February 2011 examination the examiner noted that Plaintiff's Lomotrigine blood level was below therapeutic levels, giving rise to concerns that Plaintiff may not be taking his Lamictal as prescribed. The practitioner noted that an EEG taken November 2010 showed independent epileptiform discharges from the left and right frontal central regions consistent with complex partial epilepsy.

**IV.    VOCATIONAL EXPERT TESTIMONY**

The ALJ asked the VE to assume an individual with Plaintiff's age, education, work experience, and skill set who has no past relevant work but who has the ability to perform sedentary jobs with the following limitations: (1) never climb ladders, ropes, or scaffolds, and never crawl, (2)

never operate foot controls with the left foot, (3) occasionally climb ramps or stairs, balance, stoop, crouch, or kneel, (4) use the left upper extremity as an assist only with no full extended or overhead reaching and no handling, (5) unlimited use of the right upper extremity, (6) need to avoid all use of moving machinery and all exposure to unprotected heights, (7) work must be limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production and involving only simple work-related decisions with few or any work place changes, to include no line work and no negotiations, (8) production quotas are acceptable provided there is no fast-paced moving machinery. (TR 56-57). The VE testified that an individual with these limitations could perform sedentary work as a plastic sorter, unskilled surveillance system monitor, or information clerk, comprising approximately 5,900 jobs within Southeastern Michigan. (TR 55, 57-58).

Next, the ALJ asked the VE to testify as to whether jobs were available for an individual with Plaintiff's age, education, and skill set who would miss more than one unscheduled day of work each month or whom, on more than one unscheduled partial day each month, would need to arrive to work late, leave early, or take additional breaks throughout the day. (TR 58). The VE testified that work would not be precluded with one unscheduled or partially unscheduled day each month, but work would be precluded if an individual required two or more such days. (TR 58). The VE also testified that work would be precluded if the individual was unable to sustain sufficient concentration, persistence, or pace to perform simple repetitive tasks. (TR 58-59).

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff attained the age of eighteen on April 6, 2009 and was eligible for supplemental security benefits as a child for the month preceding the month in which he attained age eighteen. (TR 22). The ALJ found that Plaintiff was notified that he was no longer disabled as

of November 1, 2009 based on a redetermination of his disability under the adult standards for disability. Next, the ALJ found that although Plaintiff suffered since November 1, 2009 from the severe impairments of seizure disorder, borderline intellectual functioning, history of sickle cell anemia with cerebrovascular accident and left-sided hemiplegia, and status post bone marrow transplant, he did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (TR 22-24).

The ALJ concluded that Plaintiff has had the RFC as of November 1, 2009 to perform a limited range of sedentary work. He further concluded that because Plaintiff's disability ended on November 1, 2009 and he has not become disabled since, and because Plaintiff has been capable of performing a significant number of jobs existing in the economy from the date his disability ended, he does not qualify for continuing supplemental security disability benefits. (TR 24-28).

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the

administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Pursuant to 42 U.S.C. § 1382c(a)(3)(H)(iii)(I), the Commissioner is required to redetermine benefit eligibility upon Plaintiff's attainment of the age of eighteen using the same criteria used in determining initial benefit eligibility for adults. Thus, Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question

if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.    Analysis**

Plaintiff argues that the ALJ erred in failing to consider whether he met the criteria for epilepsy under listing 11.02, erred in failing to discuss Plaintiff's treating physician opinions in the Step Three analysis, erred in failing to assign appropriate weight to treating physician opinions, and erred in his RFC assessment.

*1.    Step Three Determination*

A claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings of impairments at the third step in the disability evaluation process. 20 C.F.R. § 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)). A claimant must satisfy all of the criteria to meet a listing, or have impairments which are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009). It is the claimant's burden to demonstrate that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

To meet the criteria for listing 11.02 epilepsy - convulsive epilepsy (grand mal or psychomotor), the claimant must present a documented detailed description of a typical seizure

pattern, including all associated phenomena, showing that his seizures occur more frequently than once a month in spite of at least 3 months of prescribed treatment. The claimant's seizure pattern must demonstrate either (A) daytime episodes with loss of consciousness and convulsive seizures, or (B) nighttime episodes manifesting residuals which interfere significantly with daytime activity. To meet the criteria for nonconvulsive epilepsy under listing 11.03, a claimant must demonstrate that he has seizures occurring more frequently than once weekly. Under both listings, the criteria will only be applied if the seizure activity persists "despite the fact that the individual is following prescribed antiepileptic treatment." Listing 11.00(A); Soc. Sec. Ruling (SSR) 87-6 (due to widely available modern treatment, only a small percentage of individuals with epilepsy who are under appropriate treatment will be precluded from engaging in substantial gainful activity).

Here, the ALJ found physical and mental impairments at Step Two of the five step sequential analysis. He then proceeded to analyze only the mental impairments under the criteria of listings 12.02 and 12.05, and neglected to discuss or specifically evaluate Plaintiff's seizure disorder in comparison to the criteria of listings 11.02 or 11.03. Had the ALJ stopped there the undersigned would recommend a sentence four remand for a Step Three determination of Plaintiff's seizure disorder. However, later in his opinion the ALJ discussed Plaintiff's seizure disorder in specific enough terms to make it clear that Plaintiff did not meet the criteria of listings 11.02 or 11.03. In fact, the ALJ found that the evidence showed that Plaintiff's seizures were infrequent despite noncompliance with seizure medication. (TR 24). In support of his findings, the ALJ cited specific evidence from the record that shows that Plaintiff's seizures did not regularly occur more frequently than once per month. (TR 25). He also cited evidence that indicates that Plaintiff went months at a time with no reported seizure activity. The ALJ further indicated that he considered evidence of

11

Plaintiff's blood draws showing that his anti-seizure medication Lomotrigine was below therapeutic levels and prompted comments from medical practitioners that he may not be taking his medication as prescribed.

The ALJ found that Plaintiff has the severe impairments of seizure disorder, borderline intellectual functioning, and history of sickle cell anemia with cerebrovascular accident and left-sided hemiplegia, and status post bone marrow transplant. He then concluded that Plaintiff's severe impairments do not meet or medically equal the specific criteria for any listed impairment. The ALJ's discussion of the evidence of seizure activity makes it clear that Plaintiff does not meet the criteria of listings 11.02 or 11.03. Plaintiff has not pointed to evidence showing that he medically equals one of the listings. In addition, Plaintiff's claim that the ALJ committed reversible error because he failed to discuss treating source notes in conjunction with the listings is not persuasive. The ALJ's discussion of evidence pertaining to Plaintiff's seizure disorder is not so deficient as to preclude meaningful review. Because the ALJ's analysis of Plaintiff's seizure disorder is supported by substantial evidence in the record, the undersigned will not recommend remand.

2.      *Treating Physician Rule and the RFC*

Plaintiff argues that the ALJ violated the treating physician rule by failing to discuss and properly assign weight to the reports of Plaintiff's treating physicians. He also argues that the ALJ failed to take all of Plaintiff's impairments into consideration in determining the RFC.

The Commissioner has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted). One such standard is that the ALJ must "give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the] case record.' " *Id.* (citation omitted). The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id.* (citation and internal quotation marks omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Id.* (citation omitted). The Sixth Circuit has "made clear" that it will remand the Commissioner's determination if it has not provided good reasons for the weight it has given to a treating physician's opinion. *Id.* at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946(c). When determining the RFC, the ALJ must review all of the relevant evidence and consider each of the claimant's medically determinable impairments whether or not severe. 20 C.F.R. § 416.945(a)(1), (2).

Here, Plaintiff argues that the ALJ failed to discuss Plaintiff's treating source opinions, failed to document what weight was given to the opinions, cherry picked evidence, and assigned improper weight to substantial evidence. Plaintiff makes these allegations without identifying which treating source opinion the ALJ improperly assessed. The undersigned has made every effort to consider Plaintiff's arguments but finds that the ALJ did not commit reversible error in his analysis of the medical evidence. The ALJ reviewed the evidence of record, assigned weight to the medical opinions, discounted medical evidence that was not consistent with the substantial evidence of record, and reached a determination on Plaintiff's RFC. In doing so, the ALJ considered evidence pertaining to Plaintiff's learning disability, seizure disorder, left-sided weakness, and general

13

physical and mental status. The undersigned concludes that the ALJ did not violate the treating source rule, cherry pick evidence, or fail to consider Plaintiff's impairments in his RFC determination. The undersigned further concludes that the RFC and the ALJ's opinion in this matter is supported by substantial evidence in the record and should not be disturbed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 10, 2013              s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 10, 2013              s/ Lisa C. Bartlett
                                  Case Manager